UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN HENRY JACKSON,

        Plaintiff,        Case No. 1:09-cv-509

v.        Honorable Robert Holmes Bell

PATRICIA CARUSO et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because the Michigan Department of Corrections and the Michigan Parole Board are immune and Plaintiff fails to state a claim against Patricia Caruso.

**Discussion**

I.  Factual allegations

Plaintiff presently is incarcerated at the West Shoreline Correctional Facility. In 1989, Plaintiff was convicted of first-degree criminal sexual conduct in the Saginaw County Circuit Court. The trial court subsequently sentenced Plaintiff to a prison term of ten to thirty years.[1] Plaintiff's *pro se* complaint concerns the denial of his parole by the Michigan Parole Board. Plaintiff sues the Michigan Department of Corrections (MDOC) Director Patricia Caruso, the MDOC and the Michigan Parole Board.

The Michigan Parole Board released Plaintiff on parole in 1996, 1997, 1998 and 2002 but revoked Plaintiff's parole each time due to parole violations. Plaintiff's parole was last revoked in 2003 and he was returned to the MDOC. Since Plaintiff's 2003 incarceration, Plaintiff has been eligible for parole seven times. Despite receiving a parole guideline score of "high probability of parole" each time that he has been eligible for parole, the Michigan Parole Board has denied Plaintiff's parole. Plaintiff's last parole denial was in March 2009.

On March 19, 2009, Plaintiff received a Parole Board Notice of Decision, which informed him that his incarceration was being continued for an additional twelve months. As substantial and compelling reasons for denying his parole, the notice indicated that Plaintiff "needs to develop a better understanding of the root cause's [sic] of his criminal thinking. Needs to stay involved in therapy." (Ex. J to Compl., Page ID #66, docket #1.) Plaintiff's next parole reconsideration date was June 13, 2010. (*Id.*)

---

[1] *See* Michigan Department of Corrections' Offender Tracking Information System website at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=204290.

Plaintiff argues that Michigan Compiled Laws § 791.234(11)[2], which was enacted after his 1989 conviction and removed a prisoner's right to appeal a parole decision, violates his "substantial" due process rights and his rights under the *Ex Post Facto* Clause. (Compl., Page ID #8, docket #1.) Plaintiff also argues that the Michigan Parole Board violated his due process rights by arbitrarily denying his parole. Specifically, Plaintiff claims that the Michigan Parole Board did not find substantial and compelling reasons, in accordance with Michigan Compiled Laws § 791.233e, to continue Plaintiff's incarceration after he received a parole guideline score of "high probability of parole." (*Id.* at 10, 12.) Finally, Plaintiff asserts that Defendant Caruso failed to require the Michigan Parole Board to follow its parole guidelines when a prisoner received a parole guideline score of "high probability of parole." (*Id.* at 18.)

Plaintiff requests injunctive and declaratory relief.

II.    *Wilkinson v. Dotson*, 544 U.S. 74 (2005)

Plaintiff challenges his parole denials. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been

---

[2]Michigan Compiled Laws § 791.234(11) only allows prosecutors and victims to appeal a prisoner's grant of parole.

- 3 -

"reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Plaintiff does not seek release from prison; rather, he requests a new parole hearing. As a consequence, under *Wilkinson*, his success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action does not appear to be *Heck*-barred. Nevertheless, assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

### III. Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections or the Michigan Parole Board, which is part of the Michigan Department of Corrections. MICH. COMP. LAWS § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S.

332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC and the Michigan Parole Board are absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, No. 08-1541, 2010 WL 841198, at *7 (6th Cir. Mar. 12, 2010) (MDOC is entitled to sovereign immunity); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000) (same); *see also Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Carson v. Mich. Parole Bd.*, No. 88-1277, 1988 WL 79688, at *1 (6th Cir. July 27, 1988) (same). In addition, the State of Michigan (acting through the Michigan Department of Corrections and the Michigan Parole Board) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC and the Michigan Parole Board.

IV.Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Supervisory Liability**

Plaintiff fails to make specific factual allegations against Defendant Caruso, other than his claim that Caruso did not require the Michigan Parole Board to follow its parole guidelines when a prisoner received a parole guideline score of "high probability of parole." (Compl., Page ID# 18, docket #1.) Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based

upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Caruso.

Even if the named Defendants were not subject to dismissal for the reasons stated above, Plaintiff still fails to state a claim under the Due Process Clause and *Ex Post Facto* Clause.

B. **Due Process**

1. **Procedural Due Process**

Plaintiff claims that the Michigan Parole Board, when denying his parole, violated his procedural due process rights by failing to provide valid substantial and compelling reasons for departing from the parole guidelines when denying his parole. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a

parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993);

*Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the Sixth Circuit has held that the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." *Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1165 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board"). Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. *Carnes*, 76 F. App'x at 80.

The Sixth Circuit has also rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices has resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster*, 595 F.3d at 369. Until Plaintiff has served his thirty-year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore,

implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

2. **Substantive Due Process**

Plaintiff claims that the Michigan Parole Board violated his substantive due process rights by arbitrarily denying his parole.[3] Substantive due process "prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty, . . . ." *United States v. Salerno,* 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980), Plaintiff does not present any such allegations here. *See Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir. 2002) (considering substantive due process claim in context of parole). In order to demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Plaintiff must show that the Michigan Parole Board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Hampton v. Hobbs,* 106 F.3d 1281, 1288 (6th Cir. 1997); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995). Plaintiff's sentence was imposed for first-degree criminal sexual conduct. Further, Plaintiff has been released on parole four times. Each time, he has been returned to prison due to parole violations. In light of

---

[3]Plaintiff also argues that the enactment of Michigan Compiled Laws § 791.234(11) after Plaintiff's 1989 conviction violates his "substantial" due process rights. (Compl., Page ID #8, docket #1.) As stated in this section, the Michigan Parole Board's decision to deny Plaintiff's parole failed to shock the conscience or to constitute an "egregious abuse of governmental power;" therefore, Plaintiff fails to state a claim. *See Hampton,* 106 F.3d at 1288.

Plaintiff's criminal and parole history, the actions of the Michigan Parole Board in continuing to deny Plaintiff's release cannot reasonably be considered to either shock the conscience or constitute an "egregious abuse of governmental power." *Id.* Therefore, Plaintiff's substantive due process claim fails.

### C. Ex Post Facto Clause

Plaintiff argues that the enactment of Michigan Compiled Laws § 791.234(11), which eliminated a prisoner's appeal of a parole denial, violates the Constitution's *Ex Post Facto* Clause. The *Ex Post Facto* Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the *Ex Post Facto* Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A sufficient risk of increased punishment involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n.3. When the change in the law "does not by its own terms show a significant risk" of increased punishment, the inmate bringing the *ex post facto* challenge "must demonstrate, by evidence drawn from the [law]'s practical implementation by the agency charged with exercising discretion, that [the law's] retroactive application will result in a longer period of incarceration than under the earlier" version of the law. *Foster,* 595 F.3d at 362 (citing *Garner v. Jones*, 529 U.S. 244, 255 (2000)).

Before 1982, Michigan law prohibited appeals from parole board decisions. *See Jackson v. Jamrog*, 411 F.3d 615, 617-18 (6th Cir. 2005). By Public Act 314 of 1982, the Michigan statute was amended to allow appeals by prisoners for the denial of parole. The legislature later amended the statute to permit appeals from orders granting parole by prosecutors and crime victims. In 1999, however, the legislature removed the right of prisoners to appeal parole denials. Michigan Compiled Laws § 791.234(11) now provides: "[t]he action of the parole board in granting a parole is appealable by the prosecutor of the county from which the prisoner was committed or the victim of the crime for which the prisoner was convicted." Michigan law therefore no longer provides state court review of parole board decisions denying parole. Because Plaintiff was convicted in 1989, the 1999 change to the parole statute eliminated Plaintiff's right to appeal a parole denial.

The Sixth Circuit recently addressed an *ex post facto* challenge to a prisoner's loss of the right to appeal a denial of parole. *See Foster,* 595 F.3d at 364. In its decision, the Sixth Circuit relied upon statistics provided by the House Legislative Analysis to the 1999 Amendment. Those figures indicated that the vast majority of appeals from the denial of parole were fruitless: "[f]rom 1995 to 1999, inmates filed 3,800 appeals from Board decisions, but only about four percent of those cases were remanded to the Board for reconsideration, and only about six-tenths of a percent ultimately resulted in parole." *See Foster,* 595 F.3d at 364 (citing *Jackson*, 411 F.3d at 617-18 (quoting House Legislative Analysis, First Analysis, H.B. 4624 at 9 (Mich. Mar. 21, 2000))). The Sixth Circuit found that any harm, which resulted from the change in law was too speculative to contribute to the alleged risk of increased punishment in any significant way:

> Because the loss of the right to appeal "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment" attached to plaintiffs' crimes, *Morales*, 514 U.S. at 509, 115 S. Ct.

> 1597, this change in the law does not contribute in a significant way to the risk of
> increased punishment alleged as the basis for the ex post facto claim.

*Id.* at 364. Further, Plaintiff has not alleged that his loss of the right to appeal a parole decision created a significant risk of increased punishment. *See Foster,* 595 F.3d at 362 (citation omitted). Therefore, Plaintiff's *ex post facto* claim fails to state a claim.

        D.      **State Law Claims**

Plaintiff argues that Defendants have failed to follow the Michigan parole statutes. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. To the extent that Plaintiffs' complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). This claim will be dismissed without prejudice.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed because the Michigan Department of Corrections and the Michigan Parole Board are immune and Plaintiff fails to state a claim against Patricia Caruso pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>August 10, 2010</u>            /s/ Robert Holmes Bell
                                                                  ROBERT HOLMES BELL
                                                                  UNITED STATES DISTRICT JUDGE